# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROBERT SLACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-CV-1170 CAS |
| ) | |
| SAMANTHA TURNTINE and ) | |
| BRENDA REAGAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Samantha Turntine (n/k/a Samantha Pratt) and Brenda Reagan's motion for summary judgment. Plaintiff Robert Slack opposes the motion. The matter is fully briefed and ready for disposition. For the following reasons, the Court will grant defendants' motion for summary judgment.

**I.    Background**

Plaintiff Robert Slack, a prisoner at the Potosi Correctional Center, fractured his right pinky finger while playing dodge ball on December 29, 2011. He brings this action under 42 U.S.C. § 1983 alleging defendants, both of whom are nurses at Potosi Correctional Center, violated his Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference toward this serious medical need. Defendants respond that they assessed plaintiff's finger on December 29, 2011 and on January 3, 2012, respectively, and in their nursing judgment they reasonably believed the finger was not fractured. Defendants state that plaintiff cannot establish that any alleged delay in plaintiff's care and treatment amounts to a constitutional deprivation of rights.

## II. Summary Judgment Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether the moving party has met its burden, all evidence and inferences are to be viewed in the light most favorable to the non-moving party. Johnson v. Enron Corp., 906 F.2d 1234, 1237 (8th Cir. 1990).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

## III. Facts

At all relevant times, plaintiff was confined in the Missouri Department of Corrections at the Potosi Correctional Center. Defendants Samantha Pratt and Brenda Reagan worked as a nurses in the Potosi Correctional Center's medical unit.

Plaintiff injured the right fifth finger (pinky) of his right hand while playing dodge ball on December 29, 2011.

*Nurse Samantha Pratt's Treatment*

The nursing care at issue provided by Nurse Pratt occurred on December 29, 2011. On that date, Nurse Pratt saw plaintiff for a self-declared emergency related to his injured finger. An offender who self-declares a medical emergency is seen in the medical unit and assessed to determine the nature of the medical condition, whether a medical emergency exists, and whether further action is needed such as treatment or referral to a physician. During this nursing encounter, Nurse Pratt attempted to obtain plaintiff's vital signs, but plaintiff refused. Pratt examined plaintiff's finger and observed that the pinky finger of his right hand was swollen, red, and appeared deformed. While there is a dispute regarding whether plaintiff could move his finger at all, the parties agree that plaintiff could not bend the finger all the way down as it normally should. Nurse Pratt believed plaintiff's inability to bend his finger could be attributed to the swelling.

Nurse Pratt noted a "deformity" in plaintiff's medical records, and testified at deposition that she did so because the finger was swollen at the knuckle and looked larger than normal.[1] Plaintiff testified that his finger was bent at a 45 degree angle to the right. Nurse Pratt testified at deposition that based on her assessment and observations, she believed plaintiff's pinky finger was jammed and

---

[1] In his response to defendants' statement of undisputed material facts, plaintiff "disputes" facts that do not appear in plaintiff's medical records, particularly statements made at deposition by either Nurse Pratt or Nurse Reagan. Merely disputing defendants' deposition testimony to the extent it is not reflected in the medical record does not conform to the specificity required by Local Rule 4.01(E). The plaintiff must identify specific matters in dispute with reference to specific portions of the record. See Local Rule 4.01(E). The Court will not disregard defendants' deposition testimony merely because plaintiff deems it "disputed" to the extent it does not appear in the medical records.

not fractured; therefore, she did not believe splinting, an x-ray, or a referral to the physician was medically necessary. Pratt provided plaintiff with pain medication to alleviate his pain and an ice pack to address the swelling. The pain medication Pratt gave plaintiff was a 30-day supply of ibuprofen, which was a box containing 28 tablets, 240 milligrams each.

*Nurse Brenda Reagan's Treatment*

Defendant Brenda Reagan provided nursing care to plaintiff on Tuesday, January 3, 2012, five days after plaintiff's initial visit with Nurse Pratt. Nurse Reagan saw plaintiff on this date for a self-declared emergency relating to his injured finger. Plaintiff testified that he sought medical attention because "I was scheduled to go back to work the next day[,] my lay-in was about to expire. I explained to the officer on duty that my hand was in no shape to go back to work . . . he called it in for me to go to medical for a medical emergency." (Pl. Dep. at 50). A medical lay-in is authorization from the medical staff excusing an offender from performing assigned prison work duties. Plaintiff was working in the food service area of the prison at that time and Nurse Pratt had provided him a medical lay-in excusing him from work duties.

On January 3, 2012, plaintiff asked Nurse Reagan for another medical lay-in to excuse him from his work duties. During the nursing encounter, defendant Reagan took plaintiff's vital signs and performed a manual physical exam of the fingers. The parties dispute whether defendant Reagan also had plaintiff close both hands into fists to observe the tracking movement of plaintiff's fingers. Plaintiff states that during this nursing encounter he told nurse Reagan that he believed his finger was broken, that it did not function correctly, and that it hurt to make a fist. Defendant Reagan's nursing notes state that plaintiff had a limited range of movement to the right little finger and ring finger, bruising with a small amount of swelling, and "good tracking to all 10 digits."

Defendant Reagan's nurses notes state as follows:

EXTREMITIES: LIMITED [RANGE OF MOTION] TO THE RIGHT LITTLE FINGER AND RING FINGER R/T BRUISING WITH SMALL [AMOUNT] OF SWELLING. HAS GOOD TRACKING TO ALL 10 DIGITS.

(Def. Ex. 2 at 2).

At deposition, Nurse Reagan testified that although plaintiff could not make a fist, he tracked with both hands and that "usually indicates that there's not an actual fracture in there." (Reagan Dep. at 20). Reagan testified further at deposition that she believed the swelling and bruising was attributable to a broken blood vessel and soft tissue damage in the finger. (Id. at 19). Plaintiff disputes this testimony, stating that he could not close both hands into fists and could not track with both hands.

As to why she did not order an x-ray, splint the finger, or contact the doctor, Nurse Reagan stated "because [from] what I saw it wasn't necessary." Reagan concluded that plaintiff's condition was not a medical emergency because she did not think there was a fracture, but rather a broken blood vessel. Nurse Reagan did not issue the requested medical lay-in to plaintiff.

***Other Care and Treatment at Potosi Correctional Center***

On January 4, 2012, plaintiff again presented to the medical unit. He was seen by Nurse Cassandra Solomon, who ordered an x-ray and further evaluation. An x-ray was taken of plaintiff's right hand on January 5, 2012, and showed a fracture of his fifth finger.

On January 5, 2012, Dr. McKinney, a doctor working in the medical unit of Potosi Correctional Center, reviewed plaintiff's x-ray. He referred plaintiff for an orthopedic consultation with Dr. Roger Cameron, a board-certified orthopedic surgeon and board-certified hand surgeon. Dr. Cameron examined plaintiff on January 9, 2012. He observed that plaintiff's right fifth finger

was swollen at the base, and rotated underneath the ring finger. He noted a "slight dorsal angulation" of the fractured finger. He recalled that the right fifth finger "was not grossly angulated, meaning sticking out to the side, but it did not have a normal appearance."

Dr. Cameron diagnosed plaintiff as having a fracture at the base of the proximal phalanx of the fifth finger on the right hand. He recommended open reduction internal fixation surgery to reduce it and realign and stabilize the finger. He performed this surgery on January 19, 2012 as an outpatient surgery that took less than one hour. Plaintiff was released from Dr. Cameron's care that same day following surgery.

Following surgery, there was a marked improvement in the alignment, meaning the fractured finger was now straight and plaintiff's fingers came together parallel, as they are supposed to do. Dr. Cameron was pleased with the results of plaintiff's surgery. Plaintiff does not have any permanent restrictions relating to his right fifth finger imposed by any physician.

**IV.     Discussion**

It is well established that deliberate indifference to a inmate's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment. Nelson v. Correctional Med. Servs., 583 F.3d 522, 531–32 (8th Cir. 2009) (en banc) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). A plaintiff claiming deliberate indifference must establish an objective and subjective component. "The objective component requires a plaintiff to demonstrate an objectively serious medical need. The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded such need." Thompson v. King, 730 F.3d 742, 746 (2013) (quoting McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009)).

To demonstrate a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff "must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Id. at 746-47. "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm." Id. at 747 (internal quotations and citations omitted).

"Circumstantial evidence may be used to establish the subjective mental state, and a factfinder may determine that a defendant was actually aware of a serious medical need but deliberately disregarded it, from the very fact that the [medical need] was obvious." Id. (quoting Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009)). "But [i]t is not enough merely to find that a reasonable person would have known [about the risk], or that [the officer] should have known about the risk. Even acting unreasonably in response to a known risk is not sufficient to prove deliberate indifference. However, if a response to a known risk is obviously inadequate, this may lead to an inference that the officer recognized the inappropriateness of his conduct." Id. (internal quotations omitted).

Whether a prison's medical staff deliberately disregarded an inmate's needs is a factually-intensive inquiry. McRaven, 577 F.3d at 982. "The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." Id.

With the benefit of hindsight, we know that plaintiff had a fractured finger during his nursing encounters with Nurse Pratt and Nurse Reagan. The parties do not argue the objective component of the case, that is, whether plaintiff had a serious medical need. This case turns on the subjective

component of plaintiff's case—whether Nurses Pratt and Reagan actually knew plaintiff presented a serious medical need but deliberately disregarded it.

Turning to the specific circumstances confronted by Nurses Pratt and Reagan, we adopt plaintiff's version of the facts on summary judgment. See Scott v. Harris, 550 U.S. 372, 380 (2007).

A. Nurse Samantha Pratt's Care and Treatment of Plaintiff

Plaintiff saw Nurse Pratt at 2:30 p.m. on Thursday, December 29, 2011. Plaintiff testified at deposition that he was in severe pain, his finger was bent to the right at a 45 degree angle, and his finger was swollen. He declined to have his vitals taken, stating at deposition that he was in too much pain. Nurse Pratt examined his finger, and told plaintiff that she did not believe it was broken. She noted that his finger was swollen, red, appeared deformed, and plaintiff could not bend it. She testified that the deformity she noted was swelling at the knuckle, which made the knuckle look larger than normal. (Pratt Dep. at 20). Because she did not suspect a fracture, she did not believe that splinting, an x-ray, or a referral to a physician was necessary. (Pratt Dep. at 22-26). Based on her observations and assessment, Nurse Pratt told plaintiff she thought he had sprained his finger badly. (Pl. Dep. at 28-29). She gave him a box of ibuprofen for pain, an ice pack for swelling, and a medical lay-in, which is an authorization that he did not have to report to his work assignment.

Plaintiff argues his Eighth Amendment rights were violated during this nursing encounter because Nurse Pratt was deliberately indifferent in treating his broken finger. Specifically, plaintiff argues Nurse Pratt should have alerted the doctor, scheduled plaintiff for an x-ray, or splinted his finger.

Nurse Pratt did not diagnose plaintiff as having a fractured finger. Nurse Pratt thought the finger was sprained. Negligent misdiagnosis does not create a cognizable claim under § 1983.

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

McRaven, 577 F.3d at 982 (quoting Estelle, 429 U.S. at 106).

Plaintiff has failed to submit sufficient evidence to create a genuine issue of material fact as to whether Nurse Pratt was deliberately indifferent to his medical needs. The records show that although Nurse Pratt misdiagnosed plaintiff's injury as a sprain, she treated his symptoms. He was given pain medication and instructed to apply ice. She also provided him documentation to excuse him from his work assignment for several days. He was told to follow up with medical if his pain continued. Plaintiff has submitted no evidence that this misdiagnosis was outside the standard of care, much less that it was deliberately indifferent to his medical needs. While plaintiff's treatment involved a misdiagnosis, a misdiagnosis does not rise to the level of deliberate indifference. Id.

B.  Nurse Brenda Reagan's Care and Treatment of Plaintiff

After being treated by Nurse Pratt on Thursday, December 29, plaintiff did not follow up for further treatment of his finger until Tuesday, January 3. On that day, plaintiff was treated by Nurse Reagan. Plaintiff testified that when he saw Nurse Reagan, he explained that he was scheduled to go back to work and he believed his finger was broken, and that he could not use it. At the time, he said his hand was swollen, red, painful, and his right pinky finger bent to the right at a 45 degree

angle. (Pl. Dep. at 62). He said he could not make a fist.[2] He asked for another medical lay-in to excuse him from his work assignment.

Nurse Reagan reviewed plaintiff's treatment notes, manually examined plaintiff's finger, noted the limited range of motion to his right ring finger and pinky finger, and noted the bruising and swelling. She testified that she attributed the swelling to the bruising, and because there was no bone anomaly on her examination she thought the bruising and swelling was attributable to a "busted blood vessel" and soft tissue damage. (Reagan Dep. at 19-20, 64). According to plaintiff, Nurse Reagan told him that she did not think his finger was broken, but that she believed he had burst some blood vessels. She instructed him to "work [his] finger in order for it to heal." (Pl. Dep. at 42, 63). She did not give him more pain medication and did not renew his medical lay-in.

Again, plaintiff argues his Eighth Amendment rights were violated during this nursing encounter because Nurse Reagan was deliberately indifferent in treating his broken finger. Specifically, plaintiff argues the she should have alerted the doctor, scheduled plaintiff for an x-ray, or splinted his finger. It is undisputed that Nurse Reagan did not diagnose a fracture of plaintiff's finger. Based on her observations and assessment of plaintiff's condition, Nurse Reagan believed the injury to the finger was a broken blood vessel and soft tissue damage. (Reagan Dep. at 19-20). As discussed above, negligent misdiagnosis does not create a cognizable claim under § 1983.

Nurse Reagan did not give plaintiff additional pain medication, but it is undisputed that he had been given a 30-day supply of ibuprofen only five days before. She also did not refer him to a physician, splint the finger, or order an x-ray. Plaintiff has introduced no evidence to indicate the

---

[2]Nurse Reagan's nursing notes indicate plaintiff had "good tracking to all 10 digits." Plaintiff disputes that he could track with all 10 fingers, and the Court will adopt plaintiff's version of the facts.

treatment he suggests was medically appropriate for a broken blood vessel, which is what Nurse Reagan had diagnosed. Moreover, he has submitted no evidence that Nurse Reagan acted outside the standard of care, much less that she acted with deliberate indifference, in diagnosing a broken blood vessel as plaintiff presented on January 3, 2012.

Even if a reasonable person would have recognized plaintiff had a fractured pinky finger, and even if Nurse Reagan should have known plaintiff had a fractured pinky finger, this does not rise to the level sufficient to prove deliberate indifference. Thompson, 730 F.3d at 747. "Even acting unreasonably in response to a known risk is not sufficient to prove deliberate indifference." Id. Nurse Reagan examined and treated plaintiff's finger according to her nursing judgment. While plaintiff disagrees with Nurse Reagan's treatment decision, and while later facts revealed plaintiff's finger was fractured, neither of these arguments rise to the level of deliberate indifference. Plaintiff cannot clear the substantial evidentiary threshold to show that Nurse Reagan deliberately disregarded his medical needs by administering an inadequate treatment. See Fourte v. Faulkner County, Ark., 746 F.3d 384, 389 (2014) ("At best, [plaintiff's] experts show that [defendants] should have known they were committing malpractice—but medical malpractice is not deliberate indifference.") (citing Estelle, 429 U.S. 97, 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Dulaney v. Carnahan, 132 F.3d 1234, 1242 (8th Cir. 1997) ("[S]howing that another physician might have ordered different tests and treatment does not show deliberate indifference."); White v. Farrier, 849 F.2d 322, 327 ("Although [plaintiff's] experts diagnosed [plaintiff's] condition differently . . . this does not establish deliberate indifference. Physicians are entitled to exercise their medical judgment."); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) ("[Plaintiff] has only shown . . . that another

physician in the same circumstance might have ordered different tests and treatment. This evidence raises questions of medical judgment; it does not show deliberate indifference.")); see also Thompson, 730 F.3d at 746-47 ("In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health.") (citation omitted); Prowell v. PK, 2011 WL 3609594, **1-2 (D. Minn. Aug. 16, 2011) ("Allegations of mere misdiagnosis and negligence, however, do not support a claim for cruel and unusual punishment under the Eighth Amendment.").

The only evidence plaintiff provides to bolster his claim that his finger should have been x-rayed on January 3, 2012 is that of Dr. Roger Cameron, the orthopedic surgeon who treated plaintiff on January 19, 2012. Defendants took the deposition of Dr. Cameron, and on direct examination he stated that he "probably would have x-rayed [the finger]" on January 3, 2012. When asked whether "to a reasonable degree of medical certainty" that it would have been "wrong of [Nurse Reagan] not to x-ray [the finger,]" Dr. Cameron explained:

> That's difficult for me to answer. Being considered a hand expert . . . in my community, I am the highest trained hand surgeon and tend to be the hand doctor. When somebody presents like this to me, I almost always get an x-ray. I have my reputation to think of. And if I make a mistake, it looks bad on me. So I'd x-ray it probably to the point of overkill because, being the expert, I don't want to leave any stone unturned. . . . So I am considered the hand doctor in Jefferson City, and I can't make mistakes . . . is it unlikely that a nurse would treat -- that I should hold a nurse to a higher standard as I hold myself?

(Cameron Dep. at 49-50).

But establishing that Dr. Cameron would have ordered an x-ray of the finger on January 3, 2012 does not establish that Nurse Reagan was deliberately indifferent to plaintiff's medical needs by not ordering an x-ray of the finger. Dr. Cameron does not opine on the standard of care for

- 12 -

examining a patient with a possible fracture, which could be relevant to a determination of whether Nurse Reagan was deliberately indifferent. Dr. Cameron does not even answer the question of whether Nurse Reagan should have ordered an x-ray. Rather, Dr. Cameron explained that his practice is to treat patients using a heightened standard of care, which he acknowledged as "overkill," because of his reputation as a hand expert in the community. Dr. Cameron's testimony that he would x-ray the finger to the point of overkill and leave no stone unturned speaks to a different standard of care, to which the Eighth Amendment does not require adherence.

Twice plaintiff presented to the medical unit with a painful, swollen, red pinky finger and advised the nursing staff that he thought it was broken. Nurses Pratt and Reagan each performed an examination of plaintiff's finger, and determined based on their medical judgment that the finger was not broken, and that plaintiff's symptoms indicated a condition less severe. Both nurses treated this less severe condition—a sprained or jammed finger according to Nurse Pratt, and a broken blood vessel according to Nurse Reagan. Less than a week after the injury, plaintiff presented to the medical unit for a third time. This time, with the benefit of the two prior assessments and the benefit of additional elapsed time, Nurse Solomon ordered an x-ray, which revealed the fracture. Plaintiff had been right about his finger from the beginning, and Nurses Pratt and Reagan had been wrong. While the Court is sympathetic to plaintiff and his condition, mere disagreement with the course of his treatment, even if later proven to be correct, does not rise to the level of deliberate indifference.

After evaluating the evidence in the light most favorable to plaintiff, looking at the totality of the circumstances, plaintiff has shown nothing more than two misdiagnoses and his disagreement with the treatment decisions of defendants. To state a claim based on inadequate medical treatment,

however, plaintiff "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010) (internal quotations omitted).

The Court has no evidence before it from which it could find that Nurses Pratt and Reagan were deliberately indifferent or "wanton" toward plaintiff's medical needs. Prowell, 2011 WL 3609594 at *1 (quoting Wilson v. Seiter, 501 U.S. 294, 302 (1991)). It follows that Nurses Pratt and Reagan's treatment of plaintiff did not violate his Eighth Amendment rights.

**V.     Conclusion**

Viewing the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact on the question whether defendants were deliberately indifferent to a serious medical need. Summary judgment will be granted to defendants.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Samantha Turntine (n/k/a Samantha Pratt) and Brenda Reagan's motion for summary judgment is **GRANTED**. [Doc. 40]

A Judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 19th day of December, 2014.